# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| INDEPENDENTS GAS & SERVICE STATIONS ASSOCIATIONS, INC., ) ) | | |
| Plaintiff, ) ) | | |
| vs. ) ) | Case No. 14 C 7536 | |
| CITY OF CHICAGO, ) ) | | |
| Defendant. ) | | |

------------------------------------------------------------------------

| | | |
|---|---|---|
| 5827, INC. d/b/a QUICK PICK FOOD MART, ) ) | | |
| Plaintiff, ) ) | | |
| vs. ) ) | Case No. 14 C 8860 | |
| CITY OF CHICAGO, ) ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      The plaintiffs in this case, Independents Gas & Service Stations Associations, Inc. and Quick Pick Food Mart, have sued the City of Chicago.[1] They allege that the city's flavored tobacco ordinance is preempted by the federal Family Smoking Prevention and Tobacco Control Act (FSPTCA), 21 U.S.C. § 387p (count 1),

---

[1] Independents Gas filed its complaint in September 2014; Quick Pick filed its complaint two months later. In May 2015, Quick Pick's case was reassigned to this Court. The complaints and the briefing on the motions to dismiss are the same. The Court therefore decides the motions together.

unconstitutionally vague under the Fourteenth Amendment of the U.S. Constitution (count 2), and both a violation of vested rights and improperly retroactive under the Due Process Clause of the Illinois Constitution (count 3). Count 4 of the complaints is not a claim in itself but rather is a request for permanent injunctive relief. The City of Chicago has moved to dismiss both complaints in their entirety for failure to state a claim. For the reasons stated below, the Court grants the city's motions.

## Background

The ordinance at issue in this case, enacted by the Chicago City Council in December 2013, regulates the sale of flavored tobacco products. The ordinance defines "flavored tobacco product" as "any tobacco product that contains a constituent that imparts a characterizing flavor." Chi., Ill., Code § 4-64-098 (2015). "Characterizing flavor," in turn, is defined as "a distinguishable taste or aroma, other than the taste or aroma of tobacco, imparted either prior to or during consumption of a tobacco product," including "tastes or aromas of menthol." *Id.* The ordinance aims to reduce flavored tobacco "retail density around schools," thereby "reduc[ing] smoking among adults and youths." Chi., Ill., Ordinance O2013-9185 (Dec. 11, 2013).[2] To this end, the ordinance amends section 4-64-180 of the Chicago municipal code to prohibit "sell[ing] . . . or otherwise deal[ing] in flavored tobacco products. . . at any location that has a property line within 500 feet of the property line of any public, private, or parochial elementary,

---

[2] The ordinance relies on studies showing that "the tobacco industry employs a deliberate strategy to recruit and addict young smokers by adjusting the menthol to create a milder experience for the first-time smoker" and that the tobacco industry "engages in predatory targeting of African American youth by increasing promotions for Newport cigarettes [a cigarette containing menthol] by as much as 42% in areas surrounding high schools with predominantly African American students . . . ." Chi., Ill., Ordinance O2013-9185 (Dec. 11, 2013).

2

middle, or secondary school located in the City of Chicago." Chi., Ill., Code § 4-64-180(b) (2015). Retail tobacco stores, defined as retail establishments that derive more than 80% of their gross revenue from the sale of tobacco products, are excluded from this restriction. *Id.* (incorporating Chi., Ill., Code § 7-32-010 by reference).

The plaintiffs are Independents Gas & Service Stations Association, Inc., an association of independent small business owners and operators of gasoline service stations holding tobacco licenses in the City of Chicago, and Quick Pick Food Mart, a convenience store that sells flavored tobacco products. As indicated earlier, plaintiffs allege that the ordinance is preempted by the FSPTCA, unconstitutionally vague under the Fourteenth Amendment of the U.S. Constitution, and both a violation of vested rights and improperly retroactive under the Due Process Clause of the Illinois Constitution. They seek declaratory and injunctive relief.

In October 2014, Independents Gas moved for a temporary restraining order barring enforcement of the ordinance. The Court denied that motion. The city has now moved to dismiss both complaints in their entirety.

**Discussion**

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must provide "enough facts to state a claim to relief that is viable on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which in turn means that they must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts plaintiffs' allegations as true and draws reasonable inferences in their favor. *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014).

3

**A.     Preemption**

Plaintiffs argue that the flavored tobacco ordinance is preempted by the FSPTCA, relying on an express preemption clause in 21 U.S.C. § 387p. When interpreting a statutory preemption clause, courts "begin . . . with the assumption that the historic police powers of the States" are not preempted by the federal law "unless that was the clear and manifest purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). The ordinance at issue here is intended to promote health and general welfare and is thus an exercise of the city's police powers. *See Rosin v. Monken*, 599 F.3d 574, 577 (7th Cir. 2010). Accordingly, the Court assumes that the FSPTCA does not preempt the ordinance "unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). If the preemption clause "is susceptible of more than one plausible reading," the Court "accept[s] the reading that disfavors pre-emption." *Altria Grp.*, 555 U.S. at 77.

Section 387p is divided into three clauses. The first clause says that nothing in the FSPTCA is to be construed

> to limit the authority of . . . a State or political subdivision of a State . . . to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, *including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age* . . . .

21 U.S.C. § 387p(a)(1) (emphasis added). In short, this provision expressly preserves a local government's authority to adopt and enforce laws involving the sale of tobacco products.

The preservation clause is followed by a preemption clause. The

4

preemption clause states that "[n]o [s]tate or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards . . . ." *Id.* § 387p(a)(2)(A).[3] The phrase "tobacco product standards," as used in the FSPTCA, encompasses a wide variety of issues, including: nicotine yields; reduction or elimination of harmful components; product testing; sale and distribution restrictions; labeling; and construction, components, ingredients, additives, constituents, and properties of the tobacco product. *See* 21 U.S.C. § 387g. The third clause in section 387p states that the preemption clause "does not apply to requirements relating to the sale, distribution, possession, . . . exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age . . . ." *Id.* § 387p(a)(2)(B). The third clause therefore exempts certain categories of regulation from the preemption clause, even if related to tobacco product standards.

In sum, the first clause in section 387p provides that states and their political subdivisions retain broad authority to regulate tobacco products; the second clause preempts local laws that regulate tobacco product standards; and the third clause establishes an exception to the second clause for local laws that are related to sales, distribution, possession, access, advertising, or use of tobacco products. Under this scheme, "local laws that would otherwise fall within

---

[3] This clause also preempts local laws pertaining to "premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." *Id.* § 387p(a)(2)(A). Plaintiffs do not argue that the ordinance conflicts with this part of the preemption clause.

5

the preemption clause are exempted" if they satisfy the third clause. *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 433 (2d Cir. 2013). Thus, in this regard, section 387p "distinguishes between manufacturing and the retail sale of finished products . . . ." *Id.* at 434.

The city's flavored tobacco ordinance provides that "[n]o person shall sell . . . or otherwise deal in flavored tobacco products . . . at any location that has a property line within 500 feet of the property line of any public, private, or parochial elementary, middle, or secondary school located in the City of Chicago." Chi., Ill., Code § 4-64-180(b) (2015). The ordinance does not discriminate among flavored tobacco products; no flavored tobacco product can be sold within 500 feet of a school (unless by a retail tobacco store), regardless of how the product is manufactured. By its plain terms, then, the ordinance operates through a sales regulation and thus falls squarely within the section 387p(a)(2)(B) exception to the preemption clause.

Plaintiffs note that section 387p(a)(2)(B) only applies to "requirements relating to the sale" of tobacco products, unlike section 387p(a)(1), which applies to "measure[s] relating to *or prohibiting* the sale" of tobacco products. 21 U.S.C. § 387p(a)(2)(B), 387p(a)(1) (emphasis added). Thus, plaintiffs argue, because the ordinance prohibits the sale of flavored tobacco within 500 feet of a school, section 387p(a)(2)(B) does not apply. This argument is unpersuasive. The ordinance permits retail tobacco stores to sell flavored tobacco within 500 feet of a school; it also permits any retailer to sell flavored tobacco if located more than 500 feet from a school. Thus, the "sales restriction . . . does not constitute a complete ban, as it permits the limited sale of flavored tobacco products . . . ." *U.S. Smokeless Tobacco*, 708 F.3d at 435-36.

6

Requirements relating to sale will always prohibit sale under certain circumstances, namely when the requirements for sale are not met.  Because flavored tobacco products may be sold within the city if the ordinance's requirements are met, the law does not constitute a prohibition in the meaning of the FSPTCA.  *See id.* at 436 ("[G]iven Congress's explicit decision to preserve for the states a robust role in regulating, and even banning, sales of tobacco products, we adopt a broad reading of the saving clause and a limited view of the kinds of restrictions that would constitute a ban and require us to address the permissibility of outright prohibitions under the saving clause.").

Plaintiffs also argue that the ordinance is a manufacturing regulation disguised as a sales regulation because it will cause manufacturers to reduce production of flavored tobacco products.  The Second Circuit directly addressed this argument in *U.S. Smokeless Tobacco Manufacturing Co. LLC v. City of New York*.  Observing that virtually all sales regulations will "have some effect on manufacturers' production decisions," the Second Circuit concluded that "[t]o constitute a product standard subject to preemption, a local sales regulation must be something more than an incentive or motivator . . . ."  *Id.* at 434 (quoting *Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965, 973 (2012)).  That is, to run afoul of the preemption clause, the ordinance must "function[] as a command to tobacco manufacturers to structure their operations in accordance with locally prescribed standards . . . ."  *Id.* (internal quotation marks omitted).  Thus, an ordinance that banned tobacco products flavored using a particular manufacturing process might be preempted by the FSPTCA.  The ordinance at issue in *U.S. Smokeless Tobacco*, by contrast, did not regulate flavored tobacco products based on

7

"what goes into the tobacco or how the flavor is produced, but only whether [the] final tobacco products are ultimately characterized by—or marketed as having—a flavor." *Id.* at 435. Because the sales regulation was "not easily read to direct manufacturers as to which ingredients they may or may not include in their products," the court held that it was not preempted. *Id.* at 435-36; *see also Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71, 82-83 (1st Cir. 2013) (citing *U.S. Smokeless Tobacco* and holding that a similar ordinance was not preempted by the FSPTCA).

The Court finds the analysis in *U.S. Smokeless Tobacco* persuasive. Like the ordinance in that case, Chicago's ordinance regulates flavored tobacco products without regard for how they are manufactured. Even if the ordinance has "some effect on manufacturers' production decisions," it is not a command to implement particular manufacturing standards and, accordingly, is exempt from the FSPTCA's preemption clause. *Id.* at 434. The Court therefore dismisses plaintiffs' preemption claims (count 1).

**B.    Vagueness**

A statute is unconstitutionally vague if it "does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited" or "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006). "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999). Thus, "[t]he Constitution tolerates a lesser degree of vagueness" for laws with criminal rather than civil penalties, and "[t]he most important factor affecting the degree of clarity necessary

to satisfy the Constitution is whether constitutional rights are at stake." *Id.* When First Amendment freedoms are not at issue, furthermore, the claim "must be analyzed as applied to the specific facts of the case at hand." *Lim*, 444 F.3d at 915.

Chicago's flavored tobacco ordinance imposes civil penalties and does not regulate activities that implicate constitutional rights. The Court therefore analyzes the ordinance as applied to plaintiffs and, in so doing, tolerates a greater degree of vagueness than it would if the statute imposed criminal penalties or implicated constitutional rights.

Although plaintiffs concede that the ordinance's 500-foot restriction is seemingly precise, it alleges that two other aspects of the ordinance are unconstitutionally vague. First, in their complaints, plaintiffs allege that the ordinance did not "grandfather" tobacco licenses that predated its enactment. Am. Compl. ¶ 41. Thus, plaintiffs allege, it is "unforeseeable" whether the ordinance applies to a given licensee, because even if the ordinance might not apply to a particular tobacco licensee at present, a school could open within 500 feet of the licensee in the future, thus rendering the ordinance applicable to the licensee. *Id.* ¶¶ 42-43. Plaintiffs failed to assert this contention in their briefs responding to the motion to dismiss, however, and it is therefore forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[A]n argument raised for the first time in a reply brief is forfeited."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). And, in any event, the argument is unpersuasive. Plaintiffs do not allege that a licensee cannot determine

whether the ordinance applies to it now; rather, they assert that a licensee cannot know whether circumstances will change such that the ordinance will apply to it in the future. This uncertainty, however, is not caused by any vagueness in the ordinance, but by the fact that the future is unknowable—a feature that applies to all laws. Thus, even if plaintiffs had not forfeited this argument, it could not have sustained their vagueness challenge.

Second, plaintiffs allege that the ordinance includes schools that are not certified by the Illinois State Board of Education. Thus, plaintiffs argue, because the term "school" is not precisely defined, licensees cannot know whether the ordinance applies to them. But "[i]n the absence of First Amendment issues or other constitutionally protected conduct, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Levas & Levas v. Vill. of Antioch*, 684 F.2d 446, 451-52 (7th Cir. 1982) (internal quotation marks omitted). The word "school" is a simple term that is easily understood by a person of ordinary intelligence. The fact that it could have been defined with greater precision does not amount to unconstitutional vagueness. *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language."); *Schultz v. Frisby*, 877 F.2d 6, 8 (7th Cir. 1989) ("No matter how clear the ordinance seems, a hundred nice questions may follow in its wake. The Constitution does not require [the defendant] to answer each of these before it may enforce the law. Incompleteness is a curse of language, as of human imagination."). Additionally, plaintiffs do not identify any

particular licensee that cannot determine whether it is located within 500 feet of a school. Plaintiffs' failure to make such an allegation is also fatal to their claim, because there is no basis for the Court to analyze the ordinance as applied—a requirement when the law at issue does not implicate the First Amendment. *Lim*, 444 F.3d at 915. The hypotheticals discussed in plaintiffs' briefs are insufficient to sustain their vagueness challenge. *See Levas*, 684 F.2d at 451 ("[A] finding of unconstitutional vagueness cannot be based on uncertainty at the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the ordinance as applied."). The Court therefore dismisses plaintiffs' vagueness claim (count 2).

**C.     Vested rights and retroactivity**

Plaintiffs contend that the ordinance violates tobacco licensees' vested right to sell flavored tobacco. A vested right is an interest that is protected from legislative interference by the Due Process Clause of the Illinois Constitution. *First of Am. Trust Co. v. Armstead*, 171 Ill. 2d 282, 289, 664 N.E.2d 36, 39 (1996) (citing Ill. Const. art. 1, § 2). "Whether a particular expectation rises to the level of a vested right is not capable of precise definition." *Id.* at 290, 664 N.E.2d at 40. A vested right has been described as "an expectation that is so far perfected that it cannot be taken away by legislation" and as "a complete and unconditional demand or exemption that may be equated with a property interest." *Id.* at 290-91, 664 N.E.2d at 40. However, "there is no vested right in the mere continuance of a law," because "[t]he legislature has an ongoing right to amend a statute." *Id.* at 291, 664 N.E.2d at 40. Rather, "[t]he presumption is that laws do not create vested rights, but merely declare a policy to be pursued until the law ordains otherwise." *Big Sky Excavating, Inc. v. Ill. Bell Tel. Co.*, 217 Ill. 2d 221, 242,

11

840 N.E.2d 1174, 1187 (2005).

Although no Illinois court has addressed whether tobacco licenses create vested rights, Illinois courts have concluded that liquor licenses, professional licenses, licenses to connect to municipal sewers, gambling licenses, and entertainment licenses do not amount to vested rights. *See, e.g., Cty. of Cook v. Kontos*, 206 Ill. App. 3d 1085, 1088, 565 N.E.2d 249, 252 (1990) (liquor license); *Hayashi v. Ill. Dep't of Fin. & Prof'l Regulation*, 2014 IL 116023, ¶ 31-32, 25 N.E.3d 570, 580 (2015) (medical license); *LaSalle Nat. Bank & Trust Co. v. City of Chicago*, 128 Ill. App. 3d 656, 665, 470 N.E.2d 1239, 1245-46 (1984) (license to connect to municipal sewers); *Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 937-38 (7th Cir. 2007) (gambling license); *Lou Owen, Inc. v. Vill. of Schaumburg*, 279 Ill. App. 3d 976, 981, 665 N.E.2d 456, 460 (1996) (entertainment license). The Illinois Appellate Court's decision in *David E. Shelton Productions, Inc. v. City of Chicago*, 167 Ill. App. 3d 54, 520 N.E.2d 1073 (1988), is instructive. The plaintiff in *Shelton Productions* held an amusement license to operate a "juice bar" that "afford[ed] its patrons the opportunity to socialize, dance and watch videotapes." *Id.* at 55, 520 N.E.2d at 1074. After receiving complaints about juice bars causing disturbances, "the city council passed an ordinance regulating [their] hours of operation . . . ." *Id.* The plaintiff sued, arguing that "the amended ordinance unconstitutionally ignore[d] the pre-existing use of its property."[4] *Id.* at 60, 520 N.E.2d

---

[4] Although the court in *Shelton* did not style this as a "vested rights" argument, another Illinois court has interpreted the decision this way. *See Lou Owen*, 279 Ill. App. 3d at 981, 665 N.E.2d at 460 (rejecting plaintiff's claim that "it acquired a vested right to operate because of expenditures it made in reliance on the previous licensing ordinance," and citing *Shelton Productions* for the proposition that there is "no vested right to a continuance of a licensing ordinance"). The Court agrees with this interpretation.

12

at 1077. The court held that the ordinance was constitutional, observing that the case law "clearly" grants municipalities "the authority to alter the benefits and responsibilities that a license holder would receive from a license . . . ." *Id.*. After all, the court reasoned, if licenses created vested rights, "a governmental entity could never alter the terms of a license," which "would be nothing short of detrimental to the public welfare . . . ." *Id.* at 61, 520 N.E.2d at 1077.

Plaintiffs do not identify any language in the Chicago municipal code that would differentiate tobacco licenses from these other types of licenses. The code does not suggest that a tobacco license, once granted, cannot be altered or revoked by legislation. To the contrary, the code provides that "[a]ny retail tobacco dealer's license . . . shall be revocable by the mayor upon violation by the licensee of any of the provisions of this chapter or the criminal laws of the State of Illinois." Chi., Ill., Code § 4-64-340 (2015). That suggests that tobacco licenses are conditional and, like liquor licenses, "a personal privilege to pursue a business peculiarly subject to police regulation and control." *Kontos*, 206 Ill. App. 3d at 1088, 565 N.E.2d at 252. As such, the city was entitled to amend the tobacco ordinance "to alter the benefits and responsibilities that a license holder would receive . . . ." *Shelton Prods.*, 167 Ill. App. 3d at 60, 520 N.E.2d at 1077.[5]

Plaintiffs also allege that the ordinance violates the Due Process Clause of the Illinois Constitution because it applies retroactively. It is retroactive, plaintiffs contend,

---

[5] Plaintiffs point to *Gen. Auto Service Station v. City of Chicago*, 526 F.3d 991 (7th Cir. 2008). That case involved zoning rather than licensing, however, and did not even hold that the plaintiff had a vested right (it merely acknowledged that a zoning ordinance can infringe on a vested right). *Id.* at 1005-06. It is therefore inapposite. Plaintiffs do not identify any case holding that a tobacco license—or any other license, for that matter—is a vested right.

13

because some retailers who obtained licenses before the ordinance was enacted are now prohibited from selling flavored tobacco, even though they were permitted to do so when they first obtained the license.

The Illinois Supreme Court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), for determining whether an ordinance applies retroactively. *See Lazenby v. Mark's Const., Inc.*, 236 Ill. 2d 83, 94, 923 N.E.2d 735, 742 (2010). In *Landgraf*, the Court observed that a law does not apply retroactively "merely because . . . [it] upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269; *see also id.* at 269 n.24 ("Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment . . . ."). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269-70. The flavored tobacco ordinance does not attach new legal consequences to events completed before its enactment; that is, the ordinance does not revoke the tobacco licenses of retailers who sold flavored tobacco within 500 feet of school prior to its enactment. The ordinance therefore does not apply retroactively as Illinois law defines that term. Because the ordinance neither violates a vested right nor applies retroactively, the Court dismisses this claim as well (count 3).

**D.   Injunctive relief**

The complaint includes a claim requesting permanent injunctive relief. Am.

Compl. ¶¶ 58-66. The Court agrees with defendants that this is not appropriately considered as a separate claim for relief, because an injunction is a remedy rather than a cause of action. *See Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995). Accordingly, the Court dismisses the claim for injunctive relief (count 4).

**E.    Dismissal with prejudice**

Although leave to amend "should be freely given when justice so requires," the Court has "broad discretion to deny leave to amend . . . where the amendment would be futile." *United States v. Sanford-Brown, Ltd.*, No. 14-2506, 2015 WL 3541422, at *7 (7th Cir. June 8, 2015) (internal quotation marks and citations omitted). "The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). All three of plaintiffs' claims are directed at the ordinance itself, not any application of the ordinance. Accordingly, additional allegations would not cure the defects in these claims, as the defects are legal rather than factual. Amendment therefore would be futile. *See Schor v. City of Chicago*, 576 F.3d 775, 780 (7th Cir. 2009) (holding that because plaintiffs failed to demonstrate how ordinance unduly burdened the right to travel or was unconstitutionally vague, denying leave to amend as futile was not an abuse of discretion); *Cacia ex rel. Randolph v. Norfolk & W. Ry. Co.*, 290 F.3d 914, 922 (7th Cir. 2002) ("When an amendment will not cure the legal deficiencies of the original complaint, the trial court does not abuse its discretion by refusing to grant a second leave to amend."); *Panfil v. City of Chicago*, 45 F. App'x 528, 535 (7th Cir. 2002) (holding that because "precedent makes clear that [immediate fingerprint comparison] is not constitutionally required," the plaintiff's due

15

process claim could not "succeed even had he been allowed to amend his complaint and the district court did not abuse its discretion in denying the amendment based on futility").

**Conclusion**

For the foregoing reasons, the Court grants defendant's motions to dismiss counts 1-4 of both complaints with prejudice [case no. 14 C 7536, dkt. no. 16] [case no. 14 C 8860, dkt. no. 9] and directs the Clerk to enter judgment in defendant's favor in both cases.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 29, 2015